## L. J. MUELLER FURNACE CO. v. AMERICAN FOUNDRY EQUIPMENT CO.

(Circuit Court of Appeals, Seventh Circuit. July 18, 1923. Rehearing Denied September 21, 1923.)

No. 3253.

1. **Patents ⟜328—823,710, for auto sand cutter, held not infringed.**
    The Stockham patent, No. 823,710, for an auto sand cutter, for conditioning molding sand for use in foundries, *held* not infringed.
2. **Patents ⟜165—Whether limitation was erroneous immaterial.**
    The question of infringement of a patent must be determined from the claims as written and accepted, and it can avail the patentee nothing that limitation in the Patent Office was erroneous or improper.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Suit in equity by the American Foundry Equipment Company against the L. J. Mueller Furnace Company. Decree for complainant, and defendant appeals. Reversed, with directions.

A. L. Morsell, of Milwaukee, Wis., and Edw. Rector, of Chicago, Ill., for appellant.

L. C. Wheeler, of Milwaukee, Wis., and A. Miller Belfield, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This appeal is to reverse a decree finding that defendant (appellant) had infringed claims 9 and 10 of Stockham patent, No. 823,710, dated June 19, 1906, owned by plaintiff (appellee). Claim 8 was also involved, but was held invalid, and no appeal therefrom has been taken.

Defendant was a user, and the defense was assumed by Wadsworth, the manufacturer of the alleged infringing machine. Wadsworth testified he patterned exactly after the cylinder of the Robinson patent, No. 563,057, issued in 1896, on screw pulverizer or harrow. Defendant's machine is here shown from plaintiff's photograph:

The following is plaintiff's machine, illustrated in its catalogue in evidence:

[1] This case is narrowed down to the single question of infringement. After reciting the former hand method of conditioning molding sand for use in foundries, the Stockham specifications say:

"This invention provides a machine which may be moved over the sand or material to be worked thrown in a pile or ridge upon the floor or other support, said machine comprising a mixing or kneading device for working the material simultaneously with the travel of the machine thereover, said mixing device comprising elements which move the material back and forth at the same time with its movement in direction of travel of the machine."

Then follows the description and operation of the cutting blades and rotary member:

"Carried by the shaft *11* for rotation therewith is a mixing or kneading device, consisting of a pair of rotary members or wheels *18*, each comprising a plurality of spiders *19* and cutting blades *20*, attached to the outer ends of the arms or webs of said spiders. The cutting blades *20* of each wheel or rotary member have a parallel relation to one another and are set lengthwise in a spiral or diagonal direction with their width on radial lines. The spiral or diagonal arrangement admits of the blades moving the sand transversely of the machine, whereas the radial disposition of the blades enables their edges to readily penetrate the sand and their broad flat sides to act as paddles in lifting and tossing the material. The blades of one rotary member or wheel are similarly inclined in an opposite direction to the blades of the other rotary member or wheel, with the result that the material is worked toward the center and ridged in the rear of the machine. The blades have a staggered or alternate arrangement—i. e., the blades of one member are located opposite the spaces between the blades of the other member, so that the blades of the two wheels will alternately and successively act upon the

material and in passing through the latter impart a whirling or vortex motion thereto, thereby rapidly and thoroughly breaking and separating the sand."

Upon the trial some confusion arose out of the bent blade referred to in claim 7 and illustrated in Figure 2 of patent. That form does not appear elsewhere in the specifications, nor in the illustration showing plaintiff's commercial machine. It is accounted for, however, by the fact that as the written specifications were originally filed they described the bent V-shaped blade, and, while so written, claim 7 was allowed, some months thereafter the written part of the specifications was changed so as to read as last above quoted, without making any change in Figure 2. That change gave rise to the claim that plaintiff's commercial product is not an exemplification of the patent. However, in our view of the case, that is not material.

Claims 9 and 10, held to have been infringed, read as follows:

"9. A machine for working sand or like material in bulk, the same embodying a mixing or kneading device comprising blades alternately inclined in opposite directions to the plane of movement of the machine, and actuating means for said mixer or kneader to effect a blending and working of the material *by a combined tossing and back and forth movement* thereof without scattering or spreading.

"10. A machine for working sand or like material in bulk, the same comprising a mixing or kneading device and means for rotating said device, said rotary mixer comprising blades alternately inclined in opposite directions lengthwise thereof to simultaneously toss the material in the plane of travel of the machine and *move it back and forth to effect a thorough blending* without scattering or spreading thereof." (Italics are ours.)

The file wrapper shows that the Stockham patent had a perilous passage through the Patent Office. Several prior patents, all covering agricultural implements, were cited against it. The Howe patent, No. 702,859, was repeatedly cited, and on May 5, 1905, claims 8 to 13, both inclusive, were rejected. Thereafter there were personal interviews with the Examiners, and various amendments and arguments tendered, but the rejection of claims 8 to 13 was made final on July 12, 1905. Further conferences were had in the Patent Office, and on August 4, 1905, claims 9 and 10 were first tendered, but entry refused, because there had been a final rejection. November 10, 1905, Stockham presented further amendments, retendering claims 9 and 10, and tendering the amendment to the written part of the specifications, as above noted. The file wrapper shows that, to distinguish his invention, as covered by the amendment to the specifications and by claims 9 and 10, from Howe, Stockham made the following written arguments, viz.:

"In the present invention, the blades have a rotary arrangement with reference to their width and are alternately inclined in opposite directions and lengthwise of the mixer or kneading device. As a result of this construction, the blades readily penetrate the material by an edgewise movement and toss the same in the plane of travel of the machine and at the same time serve to move the material back and forth or from right to left without scattering or spreading."

And again:

"With respect to the drawings, a new figure has been added, namely, Fig. 4, to convey an adequate idea of the construction of the mixing or kneading

device, the same consisting of a shaft, supports, and cutting blades, the latter having an approximately spiral or diagonal arrangement and disposed with their greatest width upon radial lines, whereby the edge of the blades is adapted to readily penetrate the material and the broad face thereof enabled to act as a paddle to lift and toss or pitch the material as the machine is propelled over the pile of material to be worked or blended."

[2] Whether, as the District Court said, the Examiner went far afield when he brought in harrows, etc., to limit Stockham's accomplishment, would seem to be immaterial, because we must determine plaintiff's rights on the claims as written and accepted for the purpose of escaping the Howe reference. Any possible unjust error or improper limitation made 18 years ago cannot avail plaintiff anything.

Stockham's cutting or mixing wheel is in effect a Howe pulverizing wheel, cut through the middle and the two parts left end to end, so positioned that the ends of the blades on one half alternate or are staggered in their relation to those on the other half. The blades of each half are so arranged that the edges cut into the sand, lift it up on their flat sides, and throw or spill it across onto the blades of the other half, and that is the "combined tossing and back and forth movement" of claim 9, and they are the blades of claim 10 that "simultaneously toss the material in the plane of travel of the machine and *move it back and forth to effect a thorough blending.*" This is a patent of a machine, not of a process. The question is not whether the results accomplished are the same, or so similar, that the sand is left by each in good condition for use; but the question is: Does the Wadsworth machine come within the range of equivalents allowable under the Stockham patent?

The evidence shows that the Stockham machine, in the course of operation, picks up all or substantially all the sand on the flat sides of its blades and accomplishes the mixing or blending by the throwing "back and forth." On the other hand, the Wadsworth machine does the principal part of its work by rapidly cutting through the sand with its nearly upright blades. The great bulk of the sand is not lifted bodily on the flat sides of the blades, nor does it leave the floor at all. The only sand lifted at all is that raised by friction contact with the fast moving and nearly upright blades. There is in the Wadsworth machine no "tossing back and forth," of the kind described in the Stockham patent. Without that element, Stockham did nothing more than to bring the Howe pulverizer into the molding room without the sanction or protection of the Patent Office.

We are of opinion that claims 9 and 10 are not infringed.

The decree is reversed, with directions to dismiss the bill.